1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8

9  Richard Lee Meek,           )    No. CV 10-0348-PHX-NVW
                              )
10        Plaintiff,     )    **ORDER AND OPINION**
                              )
11  vs.                    )
                              )
12                        )
Michael J. Astrue, Commissioner of the)
13 Social Security Administration,   )
                              )
14       Defendant.    )
                              )
15 _____)

16

17       Plaintiff Richard Lee Meek has appealed the Commissioner of Social Security's final

18 decision to deny him disability benefits as of April 1, 2006.  The Court will vacate in part and

19 remand for further proceedings.

20     **I.**    **Standard of Review**

21       The Court will uphold the Commissioner's final decision if it is supported by

22 substantial evidence and not based on legal error.  *See* 42 U.S.C. § 405(g); *Smolen v. Chater*,

23 80 F.3d 1273, 1279 (9th Cir.1996).  The substantial evidence standard requires the evidence,

24 as a whole, to be "more than a mere scintilla but not necessarily a preponderance" and

25 otherwise sufficient such that "a reasonable mind might accept [the evidence] as adequate

26 to support a conclusion." *Tomassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008) (internal

27 quotation marks omitted).

28

1   The Court will review only the issues raised by the party challenging the ALJ's
2   decision.  *See Lewis v. Apfel*, 235 F.3d 503, 517 n.13 (9th Cir.2001).  The ALJ's decision
3   will be upheld where the "evidence is susceptible to more than one rational interpretation"
4   and the ALJ's decision is supported by one such rational interpretation.  *Orn v. Astrue*, 495
5   F.3d 625, 630 (9th Cir. 2007).  The court will not reverse for harmless error, which exists
6   "when it is clear from the record that the ALJ's error was inconsequential to the ultimate
7   nondisability determination."  *Tomassetti*, 533 F.3d at 1038 (internal quotation marks
8   omitted).

9       **II.    Facts**

10          **A.    Meek's Hearing**

11      Meek suffers from a number of medical conditions.  Three are relevant to this appeal:
12   (1) HIV, (2) hepatitis C, and (3) neuropathy in his legs and feet.  Meek claims that the HIV
13   and hepatitis C combine to make him very tired, and the neuropathy limits his mobility.
14   Meek therefore filed an application for supplemental security income in March 2005.  When
15   the state disability agency decided that he was not disabled, Meek asked for and received a
16   hearing with an administrative law judge (ALJ) in November 2007.  Meek and Meek's
17   attorney attended the hearing in person.  A medical expert called by the ALJ, Dr. Joselyn
18   Bailey, attended by telephone.

19      At the beginning of the hearing, Meek informed the ALJ that he had previously
20   worked in various types of jobs, including telemarketing, but he did not currently have a job.
21   The ALJ then asked Meek, "What do you feel is our work [*sic*] medical problem?"  Meek
22   answered, "My worst medical problem is the fatigue associated with the HIV and hepatitis
23   C." (Tr. 468.)  A little later in the hearing, the ALJ followed up, "Now, you said your major
24   problem is what, fatigue?"  Meek responded, "Fatigue and the neuropathy is."  (*Id.* at 471.)
25   Meek described the neuropathy as sometimes creating "burning, tingling, numbness"
26   sensations.  "Sometimes it feels as if I'm walking on broken bones in my feet."  (*Id.*)  The
27   ALJ then inquired:

28          Q.  Now, the fatigue, how does this affect you?

1    A.  It breaks up the biggest part of my day.  I can't go very long

2    without having to lay down and rest.

3    Q.  How long does that —

4    A.  In — how long in?

5    Q.  In an average day.

6    A.  In an average day, an average eight-hour day?

7    Q.  Yes.

8    A.  About three to four hours.

9    Q.  You have to rest, lay down and rest?

10   A.  Yes, sir.

11   (*Id.* at 471–72.)

12       After a brief discussion of other topics not relevant here, the ALJ gave Meek's

13   attorney a chance to question his client, to which the attorney responded, "Actually, Judge,

14   I think the claimant's talked about the main fatigue — the main symptoms of fatigue and the

15   neuropathy, and that's really what this case is about."  (*Id.* at 472–73.)  The attorney

16   nonetheless asked Meek a few questions about rashes resulting from a weakened immune

17   system, but clarified, "And to be fair about it, just so that we narrow the issues here, although

18   you've got the ongoing fatigue and neuropathy, the skin rashes themselves have cleared up,

19   correct?"  To this, Meek replied, "Yes, sir, they have."  (*Id.* at 473.)

20       The ALJ then questioned Dr. Bailey about whether Meek's conditions met or equaled

21   a listed disability.  Dr. Bailey stated nearly every condition and symptom Meek had ever

22   reported, recounted Meek's positive response to HIV drugs, and eventually concluded that

23   she "just [did]n't see anything" that added up to a listed disability.  (*See id.* at 474–78.)  The

24   ALJ then focused on Meek's specific complaint: "If we consider them together, if we

25   combined the effects of the HIV and hepatitis C, do they in combination meet or equal a

26   listing?"

27       "There is no listing for it," Dr. Bailey replied, "but he certainly would be restricted

28   in his activities because any liver disease [such as hepatitis C] tends to be accompanied by

fatigue.  And I had asked the experts why that is and nobody has any real answer, but anybody with liver disease, that's their main complaint of fatigue and his was today, in addition to the neuropathy . . . ." (*Id.* at 478.)

When asked by the ALJ about physical restrictions for someone like Meek, Dr. Bailey offered, "Well, due to the fatigue, that would preclude sitting more than six hours a day, preclude more than — and plus the neuropathy would be precluding standing for any more than one hour at a time up to three or four hours in a day . . . ." (*Id.*)  After discussing various other occupational restrictions, the ALJ returned to the question of Meek's fatigue, asking Dr. Bailey for her "opinion as to what type of nature, length and frequency of the breaks someone [like Meek] would have to take?"  Dr. Bailey answered:

> Well, of course, taking a three-hour rest, I think that's what I heard him say, wouldn't go along with any job, but the fatigue may not be totally due to the liver, hepatitis problem.  It was also mentioned [in Meek's medical records] that he had this anxiety and depression [in August 2006].  And when people are depressed or anxious, they often get tired. So you have a multi-factorial reason for the tiredness.  I can't say that people who complain about fatigue do that much resting during the day.  But in his case, if that were true, that would certainly interfere with any kind of work that he might want to do.

(*Id.* at 480–81.)

The ALJ excused Dr. Bailey after this exchange and gave Meek's attorney a chance for closing statement.  In that closing statement, Meek's attorney emphasized, "The doctor did several things.  She acknowledged that fatigue, which is obviously the symptoms [*sic*] we're dealing with here, can be associated with the medically determinable impairments that she testified about.  That's the positive hepatitis C virus and more importantly, the positive HIV virus . . . ." (*Id.* at 482.)  The final clause of this sentence, regarding HIV, appears to have been an overstatement.  The Court can find no testimony from Dr. Bailey linking fatigue to HIV, as opposed to hepatitis C.

1          **B.      The ALJ's Decision**

2          Three months after the hearing, the ALJ issued his decision.  The ALJ concluded that

3   Meek's HIV, hepatitis C, and neuropathy combined to disable him from September 1, 2004

4   to April 1, 2006.  That part of the ALJ's decision is not at issue here.

5          The ALJ went on to find that, beginning April 1, 2006, "the functional limitations

6   resulting from the claimant's impairments are less serious than he has alleged."  (*Id.* at 22.)

7   In support of this statement, the ALJ discussed Meek's HIV, noting that it responded well

8   to drugs and that secondary infections had been treated.  The ALJ also discussed Meek's

9   "foot, leg and back pain" — perhaps a reference to his neuropathy — but focused only on

10  the back pain and a "lumbar spine disorder," neither of which came up at the hearing.  The

11  ALJ also covered conditions that the hearing addressed only in passing, such as pulmonary

12  nodules and anxiety/depression.  (*Id.*)   And the ALJ addressed side effects from Meek's

13  medications, an issue that was not part of the hearing.  (*Id.*)

14         Concerning Meek's hepatitis C and resulting fatigue — the repeatedly emphasized

15  main symptom of which Meek complained — the ALJ's review of the evidence contains only

16  the following: (1) "Joyce L. Richards, D.O., a gastroenterologist, examined the claimant on

17  June 25, 2007, and diagnosed hepatitis C and HIV infection.  The claimant's only complaint

18  on that date was lack of energy"; and (2) "[Dr. Bailey] indicated that given [Meek's] fatigue

19  and peripheral neuropathy, the claimant would have some functional limitations."  (*Id.*)  The

20  ALJ nowhere mentioned Meek's testimony about the need for long naps each day,

21  presumably finding it not credible, or Dr. Bailey's testimony that liver diseases such as

22  hepatitis C commonly manifest themselves through fatigue.

23         The ALJ ultimately concluded, "After reviewing the overall record, the undersigned

24  finds the allegations of the claimant are not wholly credible with regard to the severity and

25  extent of his limitations beginning April 1, 2006."  (*Id.* at 24.)  The ALJ then found that

26  Meek could continue to do certain kinds of work, such as the telemarketing he had done

27  before.  (*Id.* at 26.)  The ALJ therefore denied disability benefits as of April 1, 2006, and the

28

1   Social Security Appeals Council chose not to review that decision.  Meek has timely
2   appealed to this Court.

3   **III.   Analysis**

4   **A.   The ALJ's No-Credibility Finding**

5          Whether the ALJ decided Meek's case correctly depends on whether the ALJ properly
6   discredited Meek's testimony about the severity of his symptoms.  Meek testified about two
7   particular symptoms: fatigue supposedly resulting from his HIV and hepatitis C, and pain
8   resulting from his neuropathy.  Meek's arguments to this Court focus on the fatigue
9   symptom, and so the Court will likewise address only that issue.

10         "[A] claimant who alleges disability based on subjective symptoms" such as fatigue
11  "need not produce objective medical evidence of the pain or fatigue itself, or the severity
12  thereof."  *Smolen v. Chater*,  80 F.3d 1273, 1281–82 (9th Cir. 1996).  Instead, he must
13  (a) "produce objective medical evidence of an impairment or impairments" and (b) "show
14  that the impairment or combination of impairments could reasonably be expected to (not that
15  it did in fact) produce some degree of [the subjective] symptom."  *Smolen v. Chater*,  80 F.3d
16  1273, 1281–82 (9th Cir. 1996).  Thus, in this case, Meek need not have presented medical
17  evidence of the severity of his fatigue, but only evidence of a medical condition likely to
18  cause fatigue.

19         Meek satisfied these requirements.  Dr. Bailey testified, "[A]ny liver disease [such as
20  hepatitis C] tends to be accompanied by fatigue. . . . [N]obody has any real answer [why that
21  is], but anybody with liver disease, that's their main complaint of fatigue."  Thus, Meek
22  established that he had at least one "impairment" — hepatitis C — that causes fatigue.  Meek
23  also testified that such fatigue forces him to take naps of up to four hours daily.

24         Given this, the ALJ could not reject Meek's testimony about the need for naps without
25  "mak[ing] specific findings stating clear and convincing reasons for doing so.  The ALJ [was
26  required to] state specifically which symptom testimony is not credible and what facts in the
27  record lead to that conclusion."  *Smolen*, 80 F.3d at 1284 (citation omitted); *see also Morgan*
28  *v. Comm'r of SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("The ALJ must specifically identify

what testimony is credible and what testimony undermines the claimant's complaints."). The ALJ could derive such credibility conclusions from, for example,

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284.

The ALJ did not state clear and convincing reasons for rejecting Meek's testimony. At the hearing, every participant (including the ALJ) repeatedly acknowledged that Meek's fatigue was the primary reason he could not perform substantial gainful activity. The ALJ's order, by contrast, never mentions this testimony. Rather, the ALJ focused entirely on other conditions and symptoms. This does not meet the standard of "specific findings stating clear and convincing reasons" or "stat[ing] specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

The Commissioner nonetheless argues that other portions of the ALJ's opinion demonstrate why the ALJ rejected Meek's symptom testimony. For example, the Government sees a no-credibility finding implicit in "the ALJ's . . . detailed and extensive analysis of the medical improvement of Plaintiff's impairments." (Doc. 15 at 17.) *See also Morgan*, 169 F.3d at 599–600 (objective medical improvement can undermine credibility of subjective symptom testimony). But implicit findings are, by nature, not "specific." Indeed, "even if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy. . . . [W]e cannot affirm [a credibility] determination unless it is supported by specific findings and reasoning." *Robbins v. SSA*, 466 F.3d 880, 884–85 (9th Cir. 2006).

1    In any event, for medical improvement to undermine Meek's credibility, the ALJ must
2    find "medical improvement [that] relate[s] to [Meek's] ability to work."  20 C.F.R.
3    § 416.994(b).  In Meek's case, then, such medical improvement must relate to his alleged
4    fatigue.  But the ALJ's medical improvement analysis said nothing about improvement in
5    fatigue or in the condition that apparently causes it, hepatitis C.

6    The ALJ's decision *does* point out that Meek had yet to begin treatment for hepatitis C
7    (Tr. 21, 23), and the Commissioner argues that this permissibly evinces lack of credibility.
8    The ALJ may consider infrequency or lack of treatment when evaluating credibility of
9    subjective symptom testimony, *see Tommasetti*, 533 F.3d at 1039–40, but on this record,
10   there is no evidence that Meek avoided treatment for his hepatitis C.  The only relevant
11   evidence brought to the Court's attention is (1) a letter from one of Meek's treating doctors
12   to another, stating that the doctor wanted to monitor Meek's HIV condition further before
13   starting hepatitis C interferon treatment (Tr. 189), and (2) a treatment record from another
14   doctor stating that the plan was to "review all labs[,] then likely start [hepatitis C treatment]"
15   (*id*. at 457).  Such evidence does not support a finding that Meek avoided hepatitis C
16   treatment, and regardless, the ALJ did not state or even suggest that Meek's lack of hepatitis
17   C treatment undermined his credibility.

18   The Commissioner also argues that supposed inconsistencies between Meek's
19   testimony and medical documents support the ALJ's credibility finding.  The ALJ never
20   discussed inconsistencies, but the Commissioner believes an inconsistency lies dormant in
21   the assertion that Meek never told any of his physicians that he needed a three- or four-hour
22   daily nap.  The Court sees no inconsistency here.  The record contains at least fourteen
23   instances between January 2006 and October 2007 in which a doctor's records list "fatigue"
24   as one of Meek's symptoms.  (Tr. 166, 168, 170, 174, 367, 383, 399, 420, 421, 423, 444, 446,
25   447, 450.)  The Commissioner infers that the lack of a specific reference to the length of
26   Meek's naps is evidence that Meek never talked to a doctor about it.  But given the number
27   of times that "fatigue" appears on Meek's medical records, the Commissioner's inference is
28   not permissible in this case, nor is it an inference that the ALJ actually made.

1   "[A] reviewing court should not be forced to speculate as to the grounds for an

2   adjudicator's rejection of a claimant's allegations of disabling [symptoms]."  *Bunnell v.*

3   *Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc).  Nonetheless, in the Court's review

4   of the record, the only statement that cast doubt on Meek's truthfulness — a statement the

5   ALJ's decision never mentions — was Dr. Bailey's opinion, "I can't say that people who

6   complain about fatigue do that much resting during the day."  In theory, a doctor's disbelief

7   can support a no-credibility finding.  *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1196–97 (9th

8   Cir. 2004) (two doctors' disbelief, combined with contradictions in claimant's testimony and

9   lack of objective medical evidence was enough to discredit claimant's pain testimony).  But

10   in this case, Dr. Bailey's statement could not carry the ALJ that far, especially not on its own.

11   It is too vague, perhaps expressing surprise or lack of experience as much as doubt.

12     In sum, the ALJ faced expert medical testimony that hepatitis C causes fatigue, and

13   testimony from Meek that he suffered substantial fatigue.  In such circumstances, case law

14   required the ALJ to decide whether he believed Meek's testimony.  If he did not believe

15   Meek's testimony, he needed to explain himself with clear, convincing, and specific reasons.

16   In this case, the ALJ addressed only his reasons for believing that Meek's other conditions

17   do not disable him.  Accordingly, the ALJ's decision is not supported by substantial

18   evidence, and this Court will vacate it.

19   ## B.  Meek's "Credit-as-True" Request

20     Meek argues that this Court should apply the credit-as-true rule, or in other words,

21   order the ALJ to credit Meek's fatigue testimony and remand for calculation of benefits.  But

22   credit-as-true applies only "where there are no outstanding issues that must be resolved

23   before a proper disability determination can be made, and where it is clear from the

24   administrative record that the ALJ would be required to award benefits if the claimant's

25   [subjective symptom] testimony were credited."  *Varney v. Sec'y of HHS*, 859 F.2d 1396,

26   1401 (9th Cir. 1988).  That is not this case.  Even if the Court ordered the ALJ to credit

27   Meek's fatigue testimony, the ALJ would still need to go through the ensuing steps in the

28   disability determination process.  The ALJ would need to determine, for instance, if Meek's

symptoms, including the excessive fatigue, equal or exceed a listed impairment; and if not, whether Meek retains residual functional capacity despite his fatigue.

Meek argues that Dr. Bailey's statement, "taking a three-hour rest . . . wouldn't go along with any job" (Tr. 480), conclusively establishes no residual functional capacity. But Dr. Bailey testified as a medical expert, not a vocational expert. The Court notes that four-hour daily nap may still be compatible with part-time work, and part-time work may qualify as "substantial gainful activity." 20 C.F.R. § 404.1572(a) ("work may be substantial even if it is done on a part-time basis").

IV.    **Order**

For the reasons set out above, the Commissioner's final decision to deny disability benefits beginning April 1, 2006 is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and shall terminate this case.

DATED this 8th day of November 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE